JAMES J. BYCHOWSKI, Plaintiff-Appellant, v. ERA TEMPO REALTY, INC., Defendant-Appellee (Marc W. Sargis, Defendant and Third-Party Plaintiff; Khalid Zoudo, Third-Party Defendant).

First District (6th Division)    No. 1—94—3702

Opinion filed August 25, 1995.

Burton R. Lindner & Associates, Ltd., of Chicago, for appellant.

Tinkoff, Popko & Associates, of Chicago, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff, James J. Bychowski, purchased a video store from Khalid Zoudo. At the closing, defendant, ERA Tempo Realty, Inc. (Tempo), was paid a broker's commission of $5,400 pursuant to its listing agreement with Zoudo. Shortly after the closing, because of alleged misrepresentations made by Zoudo concerning the business, plaintiff and Zoudo mutually agreed to rescind the sale, declaring it null and void. Zoudo returned the proceeds he had received to plaintiff. Tempo, however, refused to return its commission despite being directed to do so by Zoudo. Likewise, Mark W. Sargis, an attorney who had represented Zoudo and was also paid at closing, refused to return his $781 attorney fee. Plaintiff's third amended, five-count complaint names Tempo and Sargis (unjust enrichment and conversion) and Zoudo (breach of the rescission agreement). Both Tempo and Sargis have filed third-party complaints against Zoudo. The trial court entered summary judgment in favor of Tempo and against plaintiff on both counts of the complaint. We have jurisdiction pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

The issues we address are: (1) whether Tempo is entitled to a commission; and (2) if it is, may Tempo keep the money it received at closing or must it return the money to plaintiff and seek collection from Zoudo? For the reasons that follow, we affirm the judgment of the circuit court.

It is clear that when produced by Tempo, plaintiff was a ready, willing and able buyer. Zoudo accepted plaintiff's offer and in fact the sale was consummated. As such, at the time of closing, Tempo had earned and was entitled to take its commission from the sale proceeds. (See *Fox v. Ryan* (1909), 240 Ill. 391, 88 N.E. 974; *Hallmark & Johnson Properties, Ltd. v. Gadea* (1991), 218 Ill. App. 3d 921, 578 N.E.2d 1180; *Zink v. Maple Investment & Development Corp.* (1993), 247 Ill. App. 3d 1032, 617 N.E.2d 1269.) Plaintiff does not dispute that this is a correct application of the law. However, plaintiff contends that because the contract was later rescinded, it was rendered void *ab initio* and plaintiff should therefore be made whole, *i.e.*, restored to precontract status. Although this may be a correct statement of the law as between plaintiff and Zoudo, we hold, for the reasons which follow, that Tempo's right to its commission is not affected by the subsequent decision of plaintiff and Zoudo to rescind the contract.

Initially we note that neither party has supplied us with authority directly on point. The cases cited by plaintiff, *Chicago Limousine Service, Inc. v. Hartigan Cadillac, Inc.* (1990), 139 Ill. 2d 216, 564 N.E.2d 797, *Newton v. Aitken* (1994), 260 Ill. App. 3d 717, 633 N.E.2d 213, and *M.J. McCarthy Motor Sales Co. v. Van C. Argiris & Co.* (1979), 78 Ill. App. 3d 725, 396 N.E.2d 1253, all deal with the effect of a rescission on the parties to the contract, rather than the effect of it on a third party, such as in the instant case.

Our research, however, has disclosed ample authority which supports the judgment of the circuit court. In a case of first impression, *Webster v. Hochberg* (1969), 105 Ill. App. 2d 466, 245 N.E.2d 529, the court held that a broker was entitled to a commission despite the fact that the contract was later rescinded due to false representations made by the seller. In accord are a number of decisions from other jurisdictions which have held that a broker cannot be deprived of a commission in the event the parties thereafter rescind the contract. (See *Zitzelberger v. Salvatore* (1983), 312 Pa. Super. 402, 458 A.2d 1021; *Leo Eisenberg & Co. v. Payson* (1987), 152 Ariz. 390, 732 P.2d 1128; *Campbell v. Mahany* (1980), 127 Ariz. 332, 620 P.2d 711; *J.E. Stitt v. Royal Park Fashions, Inc.* (Tex. Civ. App. 1977), 546 S.W.2d 924; *Ramesh v. Johnson* (Tex. Ct. App. 1984), 681 S.W.2d 256; *George H. Beckmann, Inc. v. (Zinke's) Rainbow's End* (1956), 40 N.J. Super.

193, 122 A.2d 519.) Also, in *Robert Langston, Ltd. v. McQuarrie* (Utah App. 1987), 741 P.2d 554, the contract was rescinded due to mutual mistake of the parties. In an attempt to restore the parties to their precontract positions, the trial court ordered the broker to return its commission. In reversing, the Utah Appellate Court held:

> "Apparently relying on its analysis that mutual mistake warranted rescission of the contract, the trial court concluded that no purchaser was found within the terms of the listing agreement. This analysis confuses Langston's contractual obligations to McQuarrie, the buyer, with Langston's separate contractual obligations to the real estate agency.
>
> The general rule accepted in Utah is that a broker has earned his commission upon the procuring of a buyer who is ready, willing and able and who is accepted by the seller. \*\*\*
>
> \*\*\* Once the agency met its obligation under the exclusive listing agreement, it is irrelevant that McQuarrie later failed to complete his payment obligation or that the sale agreement was rescinded years later." *Robert Langston, Ltd.*, 741 P.2d at 558.

In applying the aforementioned authorities to the instant case, it is clear that Tempo had earned and was entitled to a commission, notwithstanding the subsequent agreement of plaintiff and Zoudo to rescind the contract and restore each other to precontract status. Because Tempo was entitled to the $5,400 commission, there can be no unjust enrichment or conversion as a matter of law.

Plaintiff also contends or at least implies that assuming Tempo was entitled to a commission, it must nevertheless return the commission to plaintiff and pursue collection from Zoudo. Similar to the first issue, plaintiff does not offer any authority in support of his position, nor has our research uncovered any Illinois case law on this issue. However, other jurisdictions have resolved this issue in favor of the broker. (*Eggerling v. Cuhel* (1976), 196 Neb. 745, 246 N.W.2d 199; see also *White v. Nemastil* (1985), 29 Ohio App. 3d 1, 503 N.E.2d 189.) We find that those cases provide the fairest result and, therefore, adopt their reasoning.

For all of the above-stated reasons, the judgment of the circuit court is affirmed.

Affirmed.

McNAMARA, P.J., and EGAN, J., concur.